UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| EXCELL CONSUMER PRODUCTS LTD., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SMART CANDLE, LLC ) <br> and ) <br> STRUCTURAL INTEGRITY PROPERTY ) <br> SERVICES, LLC., ) <br> Defendants. ) | Civil Action No. <br> ECF Case <br><br> '11 CIV 7220 |



# COMPLAINT

1. Plaintiff, Excell Consumer Products Ltd. ("Excell"), is a limited company organized under the laws of the United Kingdom, with an address of A1 Fairacres Industrial Estate, Dedworth Road, Windsor, Berkshire SL4 4LE.

2. Defendant, Structural Integrity Property Services, LLC ("Structural"), is or was a limited liability company organized under the laws of the State of Minnesota, with a place or former place of business at 1701 W 94th Street, Suite 100, Bloomington MN 55431.

3. Defendant, Smart Candle, LLC ("SCL"), is a limited liability company organized under the laws of the State of Minnesota, with a place of business at 1701 W 94th Stret, Suite 100, Bloomington MN 55431.

4. On information and belief, Structural merged, on or about April 13, 2011, with two other Minnesota companies, Smart Candle, LLC and SCL (at that time called SIPS Acquisition Company, LLC); only SCL survived the merger and such company changed its name to Smart Candle, LLC.

5. On information and belief and notwithstanding the foregoing, on or about April 26, 2011, Structural filed for the annual renewal of Structural as a limited liability

company.

**BACKGROUND APPLICABLE TO ALL COUNTS OF THIS CIVIL ACTION**

6. One Leigh Blackbourn, a citizen of the United Kingdom, developed a form of electronic candle and, more particularly, a battery-operated electronic controlled light that simulates the flame of a wax candle, which he initially called "Smartcandles." He commenced marketing such product in 2001 *via* the website www.smartcandles.co.uk. The domain name SMARTCANDLES.COM was registered on or about October 25, 2000 and Smartcandles.co.uk Ltd was incorporated as a UK Registered Company on or about September 3, 2001.

7. On or about September 3, 2001, Leigh Blackbourn also wrote to Excell, offering to discuss a commercial distribution arrangement for his Smartcandles product and, thereafter, Excell agreed to act as the sole agent for Smartcandles.co.uk Ltd and commenced sales and promotional activity.

8. On or about 2002, Excell commenced sales of SMART CANDLE products in the United States, appointing two US distributors, Dorcy International of Columbus, Ohio and later Rasmussen Import Company ("Rasmussen") of Chaska, Minnesota.

9. Other US distributors were appointed by Excell between 2002 and 2004, including Department 56 Inc, of Eden Prairie, Minnesota, and Plow & Hearth of Madison, Virginia.

10. In August 2004, one Shane C. Vail ("Vail") and Joshua D. Kutzler ("Kutzler"), both then employees of Rasmussen, approached Excell with a view to arranging a meeting to discuss setting up their own US business – independent from Rasmussen – to distribute SMART CANDLE products in the United States through Structural.

11. On or about September 2004 Vail and Kutzler met with Excell and presented proposals for Structural to become a United States distributor of SMART

company.

## BACKGROUND APPLICABLE TO ALL COUNTS OF THIS CIVIL ACTION

6. One Leigh Blackbourn, a citizen of the United Kingdom, developed a form of electronic candle and, more particularly, a battery-operated electronic controlled light that simulates the flame of a wax candle, which he initially called "Smartcandles." He commenced marketing such product in 2001 *via* the website www.smartcandles.co.uk. The domain name SMARTCANDLES.COM was registered on or about October 25, 2000 and Smartcandles.co.uk Ltd was incorporated as a UK Registered Company on or about September 3, 2001.

7. On or about September 3, 2001, Leigh Blackbourn also wrote to Excell, offering to discuss a commercial distribution arrangement for his Smartcandles product and, thereafter, Excell agreed to act as the sole agent for Smartcandles.co.uk Ltd and commenced sales and promotional activity.

8. On or about 2002, Excell commenced sales of SMART CANDLE products in the United States, appointing two US distributors, Dorcy International of Columbus, Ohio and later Rasmussen Import Company ("Rasmussen") of Chaska, Minnesota.

9. Other US distributors were appointed by Excell between 2002 and 2004, including Department 56 Inc, of Eden Prairie, Minnesota, and Plow & Hearth of Madison, Virginia.

10. In August 2004, one Shane C. Vail ("Vail") and Joshua D. Kutzler ("Kutzler"), both then employees of Rasmussen, approached Excell with a view to arranging a meeting to discuss setting up their own US business – independent from Rasmussen - to distribute SMART CANDLE products in the United States through Structural.

11. On or about September 2004 Vail and Kutzler met with Excell and presented proposals for Structural to become a United States distributor of SMART

CANDLE products. These proposals included designs for the SMART CANDLE "speech bubble" logo (for which Excell subsequently paid Structural more than $10,000.00 when it was later agreed that the US packaging and logo style would be adopted worldwide).

12. In December, 2004, Excell acquired the business of Smartcandles.co.uk Ltd.

13. SMART CANDLE products were first sold to Structural in late December 2004 and Structural commenced promotional activity under the SMART CANDLE mark in the United States on or about January, 2005.

14. On or about 10 February 2005, a company identified as Structural Integretity Property Services, Inc., a corporation organized under the laws of Minnesota (hereinafter "SIPSI"), with an address of 9429 Syndicate Avenue, Bloomington, MN 55420, filed US Trademark Application No. 76/630,886 SMART CANDLE, which is now Registration No. 3,155,669, in relation to "Battery-operated electronic controlled light that simulates the flame of a wax candle." Unbeknownst to Excell, SIPSI identified itself in the application as the owner of the SMART CANDLE trademark.

15. On or about May 25, 2011, Structural filed request to correct the Registration Certificate for Registration No. 3,155,669. According to the aforementioned request: "Registrant requests correction to the type of entity as the Registrant is a limited liability company operating under the laws of the State of Minnesota. Registrant respectfully requests the Office to correct the type of entity so that the owner of record is listed as Structural Integrity Property Services, LLC."

16. Structural proposed and attempted to negotiate a formal written exclusive distributorship agreement between the parties over a period of years and all drafts of this proposed agreement acknowledge that Excell is the owner of the SMART CANDLE trade mark rights. The proposed agreement was never signed by the parties.

17. On or about June 30, 2009, Structural filed US Trademark Application Serial No. 77/770,847 on SMART CANDLE & Design, which is now Registration No. 3,762,634. Once again and unbeknownst to Excell, Structural identified itself as the owner of the trademark, this time SMART CANDLE & Design.

18. On or about January 4, 2010, Structural entered into business arrangement with Hollowick, Inc. ("Hollowick"), a corporation with a place of business in Manlius, New York which is a supplier of tabletop lighting and chafing fuel products to the food service industry, for Hollowick to market and distribute SMART CANDLE products to the North American food service market. Products have been and continue to be distributed in connection with the SMART CANDLE brand and stocked at Hollowick's distribution facility in Manlius, NY.

19. On or about March 30, 2011, Structural informed Excell *via* telephone about a new Chinese investor, Liown Electronics, a company situated Shenzhen, China, and that it had been decided that Structural would no longer obtain products from Excell's manufacturer, Faith Global Ltd., but that Structural and Liown would, nonetheless, use the mark SMART CANDLE on identical products alternatively sourced.

20. On or about May 20, 2011, Excell demanded that Structural cease and desist use of SMART CANDLE and informed Structural that it was no longer a distributor of Excell's products including SMART CANDLE brand products. A copy of this cease and desist letter is annexed hereto as Exhibit A.

21. Notwithstanding the aforementioned letter, no substantive reply to Excell's cease and desist letter was ever received.

22. Structural and/or SCL has commenced selling products marked SMART CANDLE, which, in fact, do not come from any source of products authorized by Excell, to companies situated across the United States including to customers in New York State.

23. Structural and/or SCL uses the trade name and/or corporate name SMART CANDLE, and the domain name SMARTCANDLE.COM, for its aforementioned business.

24. Structural and now SCL have conducted business in the State of New York including, but not limited to, Structural and now SCL having a "partner," Hollowick, and doing business in this state with Hollowick, and shipping products, marked SMART CANDLE, to Hollowick's distribution facility in Manlius, New York.

25. Structural and now SCL have conducted business in the State of New York including, but not limited to, doing business with the Museum of Modern Art, with an address of 11 West 53 Street, New York, NY 10019, and displaying products at the Grand Hyatt Hotel in New York, NY.

26. Structural and/or SCL is the domain name registrant for the domain name SMARTCANDLE.COM.

27. Structural and now SCL maintain an online retail store and have conducted business, using the name and mark SMART CANDLE and the domain name SMARTCANDLE.COM, by means thereof upon information and belief with one or more customers situated in the New York State.

28. Upon information and belief Structural and now SCL's products, marked SMART CANDLE, are sold throughout the United States at stores operating under the name WALGREEN'S, which has stores in the Southern District of New York including in Westchester County (e.g. Scarsdale, New York) and in New York, NY. Structural and now SCL's products, marked SMART CANDLE, are also sold through the WALGREEN'S online store.

29. At least two third party, online vendors, situated in the State of New York, including Pure Spa Direct (485-18 South Broadway, Building 18, Hicksville, NY), and the aforementioned Museum of Modern Art, sell Structural and now

SCL's products marked SMART CANDLE on their websites.

## PERSONAL JURISDICTION AND VENUE

30. This Court has personal jurisdiction over the Defendants because upon information and belief the Defendants have engaged in acts constituting doing business in this State and/or have intentionally directed their tortuous activities towards this State, including, sales of the products bearing the trademark, corporate name and trade name SMART CANDLE and domain name SMARTCANDLE.COM in issue in this State and/or have transacted business in connection with aforementioned trademark, trade name, corporate name and domain name within the state or made contracts anywhere to supply goods in connection with the aforementioned trademark, trade name, corporate name and/or domain name in this State and/or have regularly done or solicited business, or engaged in a persistent course of conduct, or derived substantial revenue from such goods used or consumed, in this State and derive substantial revenue from interstate or international commerce and should reasonably expect the complained of actions to have consequences in this state.

31. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## SUBJECT MATTER JURISDICTION STATEMENT

32. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and a foreign state.

33. This Court has also subject matter jurisdiction over the federal claims set forth in this Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, 15 U.S.C. § 1121.

34. This Court has subject matter jurisdiction over the state law claims pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.

## COUNT I

## (Unfair Competition Under The Federal Lanham Act, 15 U.S.C. § 1125(a))

35. Excell hereby repeats and realleges each of the foregoing allegations from each of the above paragraphs as if set forth fully herein.

36. Long prior to any use of SMART CANDLE by Structural or SCL, Excell commenced using the mark SMART CANDLE as a trademark for, *inter alia*, a battery-operated electronic controlled light that simulates the flame of a wax candle and/or a battery-operated and low voltage controlled electronic light that simulates the flame of a wax candle.

37. Excell has dedicated time, money and effort in advertising, promoting and popularizing its SMART CANDLE mark and in preserving the good will associated therewith.

38. Alternatively or in addition, as the results of Excell's aforementioned dedicated time, money and effort, SMART CANDLE has come to be recognized as a source for a battery-operated electronic controlled light that simulates the flame of a wax candle and/or a battery-operated and low voltage controlled electronic light that simulates the flame of a wax candle.

39. Structural was a non-exclusive distributor of Excell's aforementioned SMART CANDLE goods but is no longer an Excell distributor; SCL was never an Excell distributor.

40. Notwithstanding that Structural is no longer an Excell distributor, Structural and/or SCL has now begun to sell, in connection with the trademark SMART CANDLE, products, namely, a battery-operated electronic controlled light that simulates the flame of a wax candle and/or a battery-operated and low voltage controlled electronic light that simulates the flame of a wax candle.

41. The aforementioned products were not purchased by Structural or SCL from Excell or its authorized manufacturer but, on information and belief, from a third party vendor in China, namely, the aforementioned Liown Electronics. Liown

Electronics does not make products for or on behalf of Excell.

42. Structural and/or SCL has, on or in connection with the aforementioned goods, or on the container for such goods, used in interstate commerce, including in New York State, a word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, in that Structural and/or SCL is selling the aforementioned products obtained from Liown Electronics and marked on the product and/or packaging with the SMART CANDLE mark and doing business, with respect to such products, in connection with the name SMART CANDLE and the domain name SMARTCANDLE.COM.

43. The aforementioned activities of Structural and/or SCL are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Structural and/or SCL with Excell or of Excell with Structural and/or SCL, or as to the origin, sponsorship, or approval of Structural and/or SCL's goods by Excell, in violation of 15 U.S.C. § 1125(a).

44. Excell has been or is likely to be damaged by the aforementioned acts of Structural and/or SCL.

45. The aforementioned activities of Structural and/or SCL are causing irreparable harm to Excell for which there is no adequate remedy at law.

## COUNT II

**(Unfair Competition Under The Federal Lanham Act, 15 U.S.C. § 1125(a))**

46. Excell hereby repeats and realleges each of the foregoing allegations from each of the above paragraphs as if set forth fully herein.

47. The aforementioned acts of unfair competition were committed knowingly and intentionally.

## COUNT III

**(Unfair Business Practices Under N.Y. Gen. Bus. Law §349)**

48. Excell hereby repeats and realleges each of the foregoing allegations from each of the above paragraphs as if set forth fully herein.

49. Structural and/or SCL's use of SMART CANDLE as the trademark for its products and to promote and sell products using the SMART CANDLE trademark and name, through its website, through its distributors and directly constitutes a deceptive act or practice in the conduct of Structural and/or SCL's business, trade or commerce and therefor in violation of N.Y. Gen. Bus. Law §349 *et seq.*

50. Structural and/or SCL has made use of SMART CANDLE in conducting its business, trademark or commerce and is likely to cause the consuming public at large to be misled as to the true source of SMART CANDLE products, namely, Excell.

51. As a result of Structural and/or SCL's actions, Excell has been damaged in an amount to be proven at trial.

## COUNT IV

### (Unfair Competition Under New York Law)

52. Excell hereby repeats and realleges each of the foregoing allegations from each of the above paragraphs as if set forth fully herein.

53. Use by Structural and/or SCL of the mark SMART CANDLE for its products is confusingly and deceptively similar to Excell's mark SMART CANDLE for Excell's goods, such that the trade and purchasing public are likely to be confused by and deceived into believing that the goods sold and marketed by Structural and/or SCL in connection with SMART CANDLE originate with or are otherwise authorized by, sponsored by, licensed by or associated with Excell and/or that goods sold and marketed by Excell in connection with SMART CANDLE originate with or are otherwise authorized by, sponsored by, licensed by or associated with Structural and/or SCL.

54. Structural and/or SCL is palming off its products, marked with Excell's trademark

SMART CANDLE, as if the true source of SMART CANDLE products were Structural and/or SCL, such that consumers are likely to be confused.

55. Structural and/or SCL have misappropriated Excell's commercial advantage by using the SMART CANDLE mark and trade name and the domain name SMARTCANDLE.COM to promote, market and sell the aforementioned products.

56. Structural and/or SCL has acted knowingly, wantonly, in bad faith, and with intentional disregard for the rights of Excell.

57. The aforementioned acts of Structural and/or SCL were done without justification and for the wrongful purpose of injuring Excell and its competitive position while unfairly benefiting either or both Structural and SCL.

58. The aforementioned acts of Structural and/or SCL have caused and will cause loss, injury and damage to Excell.

59. The aforementioned activities of Structural and/or SCL are causing irreparable harm to Excell for which there is no adequate remedy at law.

## COUNT V

(False or Fraudulent Registration, 15 U.S.C. § 1120)

60. Excell hereby repeats and realleges each of the foregoing allegations from each of the above paragraphs as if set forth fully herein.

61. On or about August 2004, Structural, through two individuals named Shane C. Vail and Joshua D. Kutzler, contacted Excell in order to become one of Excell's distributors of SMART CANDLE products in the United States

62. During the course of such discussions, Excell and Structural discussed the possibility that Structural would become the exclusive distributor of SMART CANDLE products in the United States; however, the parties never came to an agreement by which Structural would be a distributor.

63. Structural was a non-exclusive distributor, importer, or other distributing agent, on

behalf of Excell, of battery-operated electronic controlled lights that simulates the flame of a wax candle.

64. In connection with such discussions, Excell requested that Structural assist Excell in obtaining registrations on, *inter alia*, the SMART CANDLE mark. Unbeknownst to Excell, SIPSI, which Structural now asserts is actually Structural, filed as owner of the mark, and without identifying Excell as owner, the aforementioned Application Serial No. 76/630,886 to register SMART CANDLE, now Registration No. 3,155,669, and, later, Structural filed the aforementioned Application Serial No. 77/770,847, which is now Registration No. 3,762,634 on SMART CANDLE & Design.

65. Structural has procured the aforementioned Trademark Registration Nos. 3,155,669 and 3,762,634 in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or otherwise by false means.

66. With respect to Registration No. 3,762,634, the following false statements were made by declaration under 18 U.S.C. § 1001 by one Shane C. Vail, who is identified on the document as "President" of Structural, on or about June 29, 2009 and, on June 30, 2009, was submitted to the Patent and Trademark Office in the document that became Application Serial No. 77/770,847 (now Registration No. 3,762,634):

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in

such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

67. In the aforementioned statement above quoted, at least the following statements are false: "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered", "he/she believes applicant to be entitled to use such mark in commerce", "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive", "that all statements made of his/her own knowledge are true" and "that all statements made on information and belief are believed to be true."

68. In addition to the aforementioned statements in a declaration, the noted document containing the aforementioned declaration also falsely states: "In International Class 011, the mark was first used at least as early as 12/17/2004, and first used in commerce at least as early as 12/17/2004, and is now in use in such commerce."

69. The following statement was made by declaration under 18 U.S.C. § 1001 on about October 29, 2009 by one Joshua D. Kutzler, who identified himself as CEO of Structural, and on June 30, 2009, such statement was submitted to the Patent and Trademark Office in connection with Application Serial No. 77/770,847:

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that

he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; that if the original application was submitted unsigned, that all statements in the original application and this submission made of the declaration signer's knowledge are true; and all statements in the original application and this submission made on information and belief are believed to be true.

70. In the aforementioned statement above quoted, at least the following statements are false: "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered", "he/she believes applicant to be entitled to use such mark in commerce", "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive", "that all statements made of his/her own knowledge are true" and "that all statements made on information and belief are believed to be true."

71. The foregoing false statements were known by their makers to be false in that both Mr. Vale and Mr. Kutzler had, at the time of negotiations by and between Excell and Excell and Structural, worked for a company called Rasmussen Import Company, which was a distributor of Excell's SMART CANDLE products including battery-operated and low voltage controlled electronic lights that simulates the flame of a wax candle.

72. The aforementioned false statements, made under oath, are material to Structural's application in that the name of the Applicant, owner of the mark and that

owner/Applicant's exclusive right to use the applied for mark for the identified goods are important to the examination of the application by the Patent and Trademark Office.

73. Structural intended that its false statements be acted upon by the Patent and Trademark Office by issuing a registration to Structural.

74. The Patent and Trademark Office had no reason to suspect that any or all of the statements made by Structural were false and reasonably relied on such statements. On information and belief, the Patent and Trademark Office relied on one or more of Structural's aforementioned false statements.

75. As the result of the issuance of Registration Number 3,762,634 to Structural, Excell has been damaged. Among other things, Structural and/or SCL is holding itself out as owner of Excell's trademark SMART CANDLE & Design.

76. With respect to Registration No. 3,155,669, the following false statements were made on or about February 3, 2005, by one Joshua D. Kutzler, who identified himself as CEO of SIPSI, in the document that became SIPSI's application and, more particularly, in the declaration under 18 U.S.C. § 1001 that was made in connection therewith, and on February 10, 2005, the application containing such declared statements was submitted to the Patent and Trademark Office and became Application Serial No. 76/630,886 (now Registration No. 3,155,669): "he believes the applicant corporation to be the owner of the trademark sought to be registered", "he believes applicant to be entitled to use such mark in commerce", "to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive", "that all statements made of his own knowledge are true" and "all statements made on information and belief are believed to be true."

77. In addition to the aforementioned statements in a declaration, the noted document containing the aforementioned declaration also states: "Applicant is using the mark in interstate commerce on or in connection with the above identified goods (15 U.S.C. 1051(a), as amended). Date of first use of the mark anywhere was November 4, 2004; the date of first use of the mark in interstate commerce was on December 17, 2004; and is now in use in such commerce."

78. One or more of the aforementioned statements, made by Mr. Kutzler on behalf of SIPSI, which Structural claims is actually Structural, are false.

79. The foregoing false statements were known by Mr. Kutzler, and thus Structural, to be false in that Mr. Kutzler had, at the time of negotiations by and between Excell and Structural, worked for a company called Rasmussen Import Company, which was a distributor of Excell's SMART CANDLE products including the aforementioned battery-operated electronic controlled light that simulates the flame of a wax candle.

80. In a responsive document submitted to the Patent and Trademark Office by SIPSI's attorney, Peter G. Nikolai, dated September 15, 2005, Mr. Nikolai states the following:

> The examining attorney also attached website evidence that used the mark "SMART CANDLES" as well. Here, applicant points out that it is the North American distributor of SMART CANDLES. The attachments all show the applicant's products being resold by its customers. Therefore these attachments only show the strength of applicant's mark.

81. A copy of the page of the aforementioned response, showing the above quoted statement highlighted, is submitted herewith as Exhibit B

82. In the above quoted statement made by the aforementioned attorney, Peter G. Nikolai, the following portion of such statement is false: "The attachments all show the applicant's products being resold by its customers."

83. In fact, among the documents made of record by the Trademark Examining

Attorney is the document shown in Exhibit C, which shows products being sold at the loadsmorestuff.com website for £22.95, viz. the noted price is in British pounds, in a market where Structural was not a distributor. As stated immediately prior to the aforementioned false statement, Mr. Nikolai stated: "Here, applicant points out that it is the North American distributor of SMART CANDLES."

84. The foregoing false statements were known to be false in that Structural was a distributor of Excell's products and was a distributor only in the United States.

85. One or more of aforementioned false statements are material to SIPSI's application in that the owner of the mark, the owner's use of the mark and the owner/Applicant's exclusive right to use the applied for mark for the identified goods are important to the examination of the application by the Patent and Trademark Office and in that statements made in response to an Office Action refusing registration are normally relied upon by the Patent and Trademark Office in determining whether to withdraw a refusal to register a trademark.

86. If, as Structural asserts, SIPSI is actually Structural, then Structural intended that that its false statements be acted upon by the Patent and Trademark Office by issuing a registration to Structural.

87. The Patent and Trademark Office had no reason to suspect that any or all of the statements made by or on behalf of the applicant were false and reasonably relied on such statements. On information and belief, the Patent and Trademark Office relied on one or more of the aforementioned false statements.

88. As the result of the issuance of Registration Number 3,155,669 to SIPSI, which Structural claims is actually Structural, Excell has been damaged. Among other things, Structural is holding itself out as owner of Excell's trademark SMART CANDLE.

89. SCL merged with Structural and is bound by aforementioned acts of fraud made in obtaining the aforementioned trademark registrations.

90. Excell has been injured and damages in consequence of the aforementioned acts of fraud in the procurement of the aforementioned registrations.

**WHEREFORE**, Plaintiff, Excell Consumer Products Ltd respectfully requests that this Honorable Court find in favor of Excell Consumer Products Ltd and that it:

A. Declare that Defendants' unauthorized conduct violates Plaintiffs' rights under common law, the Lanham Act and the New York General Business Law;

B. Immediately and permanently enjoin Defendants, their officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from:

(1) taking any action likely to cause confusion, mistake or sponsorship of such services; and

(2) From doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers into the belief that products or services sold, offered for sale, distributed or transmitted by Defendants are authorized, sponsored, licensed, endorsed, promoted or condoned by Plaintiff, or are otherwise affiliated with or connected to Plaintiff, and from otherwise unfairly competing with Plaintiff or misappropriating that which rightfully belongs to Plaintiffs.

C. Order that Defendants account to Plaintiffs for Defendants' profits and to pay any damages sustained by Plaintiff arising from the foregoing acts of unfair competition, fraud and unfair business practices.

D. Award Plaintiffs their costs, including reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117.

E. Awarding up to three times the actual damages, in accordance with 15 U.S.C. § 1117, in connection with the violation of 15 U.S.C. § 1125(a).

F. Award Plaintiffs such other and further relief as the Court deems just and proper.

*[signature]*
Ralph Wood (RW1898)
399 Knollwood Rd., Suite 310
White Plains, NY 10603
(914)761-8503
Counsel for Plaintiff